UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

**NORMAN WILLIAMS and DIANE HOWE,**
as Legal Representatives for J.H., 5802 Dade
Street, Capitol Heights, MD 20743; **KEVIN
ATTAWAY and JAMEL BLAKELEY,** in
Washington, DC,

        **Plaintiffs,**

**ROMARM S.A., Manufacturer, Importer
and Distributor of Semiautomatic Assault
Weapon WASR10, Ser. No. CA4376-70**
Serve: Marius Ioana, Gen. Mgr.
Bd. Timisora nr. 5B,
Sector Bucharist Romania 061301,

        **Defendant.**

Case No. _____

## SECOND AMENDED COMPLAINT

Plaintiffs file their Second Amended Complaint in conjunction with their re-filed Amended Complaint here as follows:

BACKGROUND and TOLLING

1. The above case was dismissed, without prejudice, from the United States Court of Appeals in the Second Circuit, as unpublished docket number 17-3983, mandated on December 28, 2018. It affirmed the dismissal of this case, without prejudice, by the District of Vermont for lack of subject matter jurisdiction against Romarm S.A. (Romarm) based on the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. Sec. 1605 (a) (2);

2. Plaintiffs, Williams, et al., (Williams) timely re-file this action to comply with 28 U.S.C. Sec. 1367(d) to toll the District of Columbia Assault Weapon Manufacturing Strict Liability Act (SLA) with the District of Columbia's (District's) residual 3 year statute of limitations. D.C. Code 12-301(8);

SUBJECT MATTER JURISDICTION and VENUE

3. Subject Matter jurisdiction is brought under 28 U.S.C. Sec. 1330, with venue uniquely

1

found in the District Court for the District of Columbia through 28 U.S.C. Sec. 1391(b)(3).

4. The Second Circuit's dismissal, without prejudice, was narrowly decided on one of three jurisdictional clauses of the FSIA available to assert subject matter jurisdiction. The circuit court affirmed, on appeal, that defendant, Romarm S.A's (Romarm's), sale and importation of its assault weapons into the United States, eventually causing death and bodily injuries to Plaintiffs, violating the District's SLA, had *not* "direct[ly] effect" the United States. (Clause 3 of 28 U.S.C. Sec. 1605 (a)(2).

5. Second Circuit's Opinion failed to implicate Clause 1 of the FSIA, asserting subject matter jurisdiction when "[c]ommercial activity carried on by such state [has] *substantial* contact with the United States." (emphasis added). Yet, the legislative history of Clause 1 of the Act, from the House Judiciary Report, accompanying the bill that became the FSIA, specifically describes defendant, Romarm's  commercial dealings with its U.S. counterpart, Century Arms International, Inc. (Century), as prototypical commercial activity requiring an exception to sovereign immunity, as it involves "import-export transactions involving sales to, or purchases, from, concerns in the United States." Reprinted in (1976) U.S. Code Cong. & Admin. News 6604, 6615. Romarm's "importations" were pled throughout the Plaintiffs' initial and amended complaints cited elsewhere.

6. Romarm's weapons' imports to the United States also follows the law of this case, having been previously established that personal jurisdiction exists over Romarm, as ordered by the court in transferring this case to the District of Vermont on the basis of its imports:

> This court is thus satisfied that Plaintiffs have made a *prima facie* showing of both a regular course of sales into Vermont and a specific effort to target the state of Vermont. Doc. 67-1, at 3

Under well-established legal guidance and precedent, personal jurisdiction operates hand-in-glove with subject matter jurisdiction as they are found to be "inextricably intertwined". Such "intertwin[ing] directs the FSIA, through 28 U.S.C. Sec. 1603(e), that commercial activity is carried on

by a foreign state and that its activity has "substantial contacts" with the United States, even the whole US for that matter, and this cause of action is "based upon" that commercial activity.

7. The District of Maryland's Transfer Order to the District of Vermont, pursuant to Section 1406(a), found defendant's "purposeful availment" to its exclusive distributor, Central, in a continuous course of business dealings during a decade of multi-million dollars in sales, which led to the events of this lawsuit: Romarm's imported semi-automatic assault weapon, WASR10, being "discharged" in violation of the District's Strict Liability Act (SLA) causing death and bodily injuries to the Plaintiffs. C.A. No: TDC-14-3124 (January 9, 2017) Doc. 67-1, at 3 ("[Romarm] regularly sells and ships firearms directly into Vermont.")

## FSIA: ACCESS TO AMERICAN COURTS

8. Having so thoroughly "invoke[ed] the benefits of (American) laws, **Hanson v. Denckla,** 357 U.S. at 253, Romarm would have every "reason to expect to be haled before a court" here. **Shaffer v. Heitner**, 433 U.S. at 216. **McGee v. International Life Ins. Co.**, 355 U.S. 220, 223 (1957) the court noted that one of the FSIA's objectives was "to ensure specifically that 'our citizens will have access to the courts.'" (House Report, note 8, at 6, reprinted in 1976 U.S. Code Cong. & Ad. News, at 6605.)

9. The District's SLA, D.C. Code, Sec. 7-2551.01, et seq. [District of Columbia's Assault Weapons Manufacturing Strict Liability Act], is the sole basis upon which the plaintiffs' actions rely, holding

> manufacturer, importer, or dealer of an assault weapon … strictly liable in tort, without regard to fault, or proof of defect, for all direct and consequential damages that arise from bodily injury or death if the bodily injury or death *proximately* results from the *discharge* of the assault weapon … in the District of Columbia." (emphasis added).

10. As the SLA evidences, its language is directed solely to the nature and characteristics of assault weapons as abnormally dangerous and directs liability only toward these dangerous devices and

3

not liability toward independent actors, couriers, or those who may "discharge" semiautomatic assault AK-47 style weapons in its jurisdiction. This interpretation is bolstered by **District of Columbia v. Beretta,** 847 A.2d 1127 (D.C. 2004) (*en banc*) and **Heller, et al., v. District of Columbia**, 670 F.3d 1244, 1264 (D.C. Cir. 2011). (As the SLA was enacted to protect District's residents, tourists, etc., in the nation's capitol, from the abnormally destructive nature and characteristics of assault weapons flooding the District of Columbia, finding the SLA as the statutory method to hold "manufacturers, importers and dealers" legally accountable for weapons that cannot be properly controlled from entry to the District.

11. The SLA was enacted into law by voter referendum, signed into law by the Mayor of the District and approved without congressional veto. It is the unique characteristics of an AK-47 style semiautomatic assault weapon, and its repeater device, allowing for its rapid fire, and its unique ability to disburse fire errantly into crowds, striking its targets with large multiple projectiles, causing traumatic organ damage hastening death and paralyzing injuries.

## LOCUS DELICTI IS DISPOSITIVE FOR SMJ

12. Locus delicti is dispositive for subject matter jurisdiction, through FSIA's Sec. 1605(a)(2), as the locus of injury and death to the plaintiffs occurred within the United States, in the District of Columbia, due to the "discharge" of defendant's weapon there, subject matter jurisdiction is satisfied minimally through Clause 1, if not Clause 3 (by "direct effect"), of Sec. 1605(a)(2). Doc. 50-1, pars. 9, 30, 32-33, 36, 38, 40. [8/17/15] (references to Amended Complaint pleading Clause 1 "manufacturing" and "importation" by defendant, Romarm.)

## DUE PROCESS GUARANTEE

13. Moreover, subject matter jurisdiction, pursuant to the FSIA would not violate the Due Process Clause of the Fifth Amendment, as "minimum contacts" are satisfied by the law of the case, personal jurisdiction. Concurrently, Romarm's grant of due process carries also legal accountability

4

to the laws of the states. FSIA, 28 U.S.C. 1606, holds that "foreign states are to be held liable in the same manner and to the same extent as a private individual under like circumstances."

## IMPLICIT WAIVER

14. Notwithstanding sovereign immunity protections afforded Romarm as a state entity, it has implicitly waived its jurisdictional defenses when it filed a <u>responsive</u> pleading to the Plaintiffs' original complaint in the former case, *without* raising a sovereign immunity defense, to the Superior Court and Plaintiffs' attorney on 10/25/2011. Doc. 50-1, Pars. 9-13, claiming on its merits: "[f]rom the establishment of the company until now, ROMARM supplied … weapons for civilian use in the U.S. market[]") and offering to resolve the matter if it was determined that its weapon was involved. Doc. 56, at p. 2. *See* Ex.A (Waiver source: H.R. Rep. No. 94-1487, 94th Congress, 2d Sess. 13, *reprinted in* 1976 U.S. Code Cong. & Admin.News, pp. 6604, 6617.)

15. Under the FSIA, Romarm weapon imports are sold to the United States, as a whole, and its sales and imports are not limited to a particular state, making it legally accountable under our federal system of laws of this country, including its states, once service was made, under Sec. 1608 of the Act (which particularly references the *entire* United States.)

16. By selling its assault weapons, unrestricted, for civilian use throughout the entire United States, it subjected its weapons to the legality of every jurisdiction, including that of the District, at issue, not whether they were "sold" to the District, but the fact they *entered* the District, making it legally responsible on the merits, if not jurisdiction over this case. Justifiably, the plaintiffs have an "interest in obtaining convenient and effective relief" and it can only be obtained in the courts of this country. **World-Wide Volkswagon**, 444 U.S. at 292.

17. It is time, after nearly eight (8) years in search for jurisdiction, that this court act to protect the citizens of this country, who are deceased or injured by abnormally dangerous products, which the District of Columbia has constitutionally seen fit to abolish and finally determine this case on its

merits. To not do so, the foreign state agent and instrumentality, heavily involved in the vast market of the U.S., escapes scot free like no other citizen, when a law of these United States holds every person, whether foreign or domestic, equally liable under our Constitution and its state laws.

Dated: January 24, 2019

                              Law Office of Daniel Wemhoff
                              /s Daniel Wemhoff
                              Daniel Wemhoff, esq.
                              9601 Southbrook Dr. E215
                              Jacksonville, FL 32256
                              (703) 589-2199
                              danwem@yahoo.com

# Exhibit A

Case 17-3983, Document 68, 01/05/2018, 2273233, Page15 of 49

SA-13

Case 2:17-cv-00006-cr   Document 56   Filed 03/15/16   Page 13 of 24





Romarm, Timisoara Blvd., no.5B,
district 6, Bucharest,
Postal Code 061301, Romania
Phone.: 004 021 3171971;
         004 021 3171983
Fax: 004 021 3171984
E-mail: office@romarm.ro

NO. 5063 / 25. 10. 2011

TO

- **Superior Court of the District of Columbia**
  **Civil Division**
  Indiana Avenue 500, N.W., Suite 5000,
  Washington, D.C. 20001, phone no. (202)879-1133
  Case No.: 2349-11 NORMAN WILLIAMS vs. ROMARM

- **DANIEL WEMHOFF, Esq. #420233**
  4600 S. Four Mile run Dr.#831
  Arlington, VA 22204
  (703) 589-2199

We National Company ROMARM S.A. with headquarters in Bucharest, Timisoara Blvd., no. 5B, district 6, postal code 061301, registered at O.R.C. of Bucharest Court with no. J40/10841/27.11.2000, with Unique Registration Code R 13554423, bank account no. RO18RNCB0090 0005 8660 0001 opened at BCR - Lipscani Branch, represented by General Manager Marius Vasile Crisan, respond within the legal complaint filed by NORMAN WILLIAMS, DIANE HOWE, ecc., registered in Superior Court of District of Columbia, Civil Division with No. 2011 CA 2349.

National Company "ROMARM" is a romanian legal entity, state owned and operates in accordance with the romanian law.

The company aims among other things, the manufacture and marketing of weapons and ammunition, ammunition and military equipment necessary for the national defense system components and other external or internal customers, in terms of competitiveness and profitability.

8

To achieve the object of activity, our company concludes commercial contracts with external partners, in compliance with the romanian legislation and international law.

From the establishment of the company until now, ROMARM supplied military weapons for government institutions in the United States and weapons for civil use for legal entities - traders based in the U.S. All commercial contracts concluded by N.C. ROMARM. S.A. with external partners regarding the supply of military weapons or for civilian use in the U.S. market have been completed in compliance with the legislation and strict enforcement of national (domestic) and international - BATF rules.

At no time N.C. ROMARM S.A. had signed to provide military weapons for civilian use or with individuals.

We believe that any fault can not be accepted in our task regarding this incident, object of complaint mentioned above, given that we always respected internal and international laws and regulations regarding arms trade.

Anyway, we think it would be useful to solve this issue, if the identification data of those weapons (series and year of manufacture) used in the event that resulted in the death of those involved would be sent to us.

This would be helpful to verify that the weapon in question was produced or not by N.C. ROMARM SA, and if the answer will be positive, we could identify the buyer of the weapons.

Given the above, we assure you of our full support to solve this case.

GENERAL MANAGER
VASILE MARIUS CRISAN

DISTRICT OF COLUMBIA SUPERIOR COURT
CIVIL DIVISION
JUDGE TODD E. EDELMAN