**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WILLIAMS *et al.*,

            Plaintiffs,

v.

                        No. 19-cv-183 (EGS)

ROMARM S.A.,

            Defendant.

## MEMORANDUM OPINION

Plaintiffs J.H. (through his legal representatives Norman Williams and Diane Howe), Kevin Attaway, and Jamel Blakeley (collectively "Plaintiffs") bring this action against Defendant Romarm S.A. ("Romarm") under the District of Columbia's Assault Weapons Manufacturing Strict Liability Statute ("SLA"), D.C. Code § 7-2551 *et seq.*, for damages stemming from two separate shootings in March 2010, during which firearms manufactured by Romarm were allegedly used. Pending before the Court is Romarm's Motion to Dismiss and a request for the award of costs under 28 U.S.C. § 1927. Upon careful consideration of the motion, the opposition, the reply thereto, the applicable law, and the entire record herein, the Court **GRANTS IN PART** and **DENIES IN PART** Romarm's Motion to Dismiss.[1] The Court will also impose

---

[1] Because the Court lacks personal jurisdiction over Romarm, the Court declines to dismiss the Complaint with prejudice. *Cf. Bazarian Intern. Financial Associates, L.L.C v. Desarrollos*

sanctions on Plaintiffs' counsel pursuant to Rule 11 of the
Federal Rules of Civil Procedure ("Rules").

## I.    Factual and Procedural Background

As an initial matter, Plaintiffs' Complaint is deficient
under the Rules. Rule 8(a) requires a complaint to contain,
among other things, "a short and plain statement of the claim
showing that the pleader is entitled to relief" and "a demand
for the relief sought." Fed. R. Civ. P. 8(a)(1), (2).
Plaintiffs' Complaint fails to meet these minimal pleading
standards because, among other things, it contains no claims for
relief, no factual allegations, and no demand for the relief
sought. *See generally* Compl., ECF No. 1. Rather, the Second
Amended Complaint refers to the dismissal of the case by the
Court of Appeals for the Second Circuit ("Second Circuit") and
states that plaintiffs are refiling this action. *See id.* at 1 ¶¶
1, 2.

"When a trial court concludes that an initial complaint
fails to satisfy Rule 8, an appropriate remedy is to strike the
complaint . . . and provide the plaintiff with an opportunity to
file an amended complaint that complies with the Rules."
*Achagzai v. Broad. Bd. of Governors*, 109 F. Supp. 3d 67, 69

_____

*Aerohotelo, C.A.*, 793 F. Supp. 2d 124, 131 n.4 (D.D.C. 2011)
(noting that "without subject matter jurisdiction, the Court
does not have the power to reach the merits of the case and
lacks the power to dismiss with prejudice").

(D.D.C. 2015). However, "the purpose of the rule is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977). Here, despite the failure of the complaint to meet the minimal pleading standards, the defendant is well aware of the factual allegations giving rise to this lawsuit and seeks to have this case dismissed on, *inter alia*, collateral estoppel grounds. *See* Def.'s Mot., ECF No. 9 at 4. Accordingly, since the Complaint refers to the case as having been dismissed by the Second Circuit, the Court will assume the underlying facts as set forth in the Second Circuit opinion to be true for the purposes of deciding this motion. As stated by the Second Circuit:

> In two separate shootings in the District of Columbia, J.H. was killed, and Jamel Blakeley and Kevin Attaway sustained serious injuries. The firearm used in the shootings was manufactured by the defendant, Romarm, in Romania in the 1970s, and was sold to a dealer in 2006, which imported it to Vermont, whence it was sold to dealers in Ohio and Maryland, and then to an unidentified purchaser. The shootings took place in March 2010. The Amended Complaint does not allege how the firearm ended up in the District of Columbia or who used it to shoot the plaintiffs.
>
> J.H. (by his legal representatives), Blakeley, and Attaway brought claims pursuant to the District of Columbia Strict Liability Act . .

> . [and] claim that Romarm is strictly liable
> for any damages caused to them by the shooting
> because Romarm manufactured the firearm that
> was used in the shooting and caused their
> injuries.

*Williams v. Romarm, S.A.,* 751 F. Appx. 20, 22 (2d Cir. 2018)

("*Williams V*").

Plaintiffs Mr. Williams and Ms. Howe originally filed an action in the Superior Court for the District of Columbia in 2011. *See* Copy of D.C. Superior Court Docket No. 2001 CA 002349, ECF No. 9-1 at 2. Romarm removed the action to the United States District Court for the District of Columbia, where it was assigned to Judge Amy Berman Jackson. *See* Civil Docket for Case # 11-1924. After both Plaintiffs and Romarm made several filings, Plaintiffs voluntarily dismissed the action on March 26, 2012. *See* Notice of Voluntary Dismissal, ECF No. 11. Prior to dismissing the action before Judge Jackson, Plaintiffs initiated another action, which was assigned to this Court, based on the same facts and involving the same parties. *See* Civil Docket for Case # 12-436, ECF No. 1.

This Court granted Romarm's Motion to Dismiss, finding "that plaintiffs . . . failed to allege personal jurisdiction over ROMARM" under Foreign Sovereign Immunities Act ("FSIA") or the District of Columbia's long-arm statute. *See Williams v. Romarm*, 187 F. Supp. 3d 63, 72 (D.D.C. 2013) ("*Williams I*"). This Court's decision was later affirmed by the Court of Appeals

for the District of Columbia Circuit ("D.C. Circuit"). *See Williams v. Romarm, SA*, 756 F.3d 777 (D.C. Cir. 2014) ("*Williams II*").

Based on the same operative facts, Plaintiffs Mr. Williams and Ms. Howe, plus two additional Plaintiffs, Kevin Attaway and Jamel Blakely, refiled their claims in a state court in Maryland, and the action was removed to the District Court for the District of Maryland ("Maryland District Court"). *See Williams v. Romarm S.A.*, 116 F. Supp. 3d 631, 635 (D. Md. 2015) ("*Williams III*"). The issue facing the Maryland District Court was also whether it had personal jurisdiction over Romarm under the FSIA. *Id*. at 635. Finding that Plaintiffs Mr. Attaway and Mr. Blakeley were in privity with Plaintiffs Mr. Williams and Ms. Howe in the case litigated before this Court, the Maryland District Court held that: (1) under collateral estoppel, Plaintiffs could not relitigate "whether Romarm is independent from the Romanian government"; and (2) Plaintiffs had not shown that Romarm had the "minimum contacts" needed with the State of Maryland to establish the court's personal jurisdiction over Romarm. *See id*. at 638-42. In 2017, after Plaintiffs filed an Amended Complaint providing more factual allegations, including Romarm's alleged "exclusive sales agreement with a Vermont-based business," the Maryland District Court found that a "transfer to the [United States] District of Vermont [was] 'in the interest

5

of justice,'" as the case could have been brought in Vermont. *Williams v. Romarm*, No. CV TDC-14-3124, 2017 WL 87014, at *2 (D. Md. Jan. 9, 2017)("*Williams VI*").

After obtaining an Order to Transfer, Plaintiffs filed an action in the District Court for the District of Vermont ("Vermont District Court"). *See Williams v. Romarm S.A.*, No. 2:17-CV-6, 2017 WL 3842595, at *1 (D. Vt. Sept. 1, 2017) ("*Williams IV*"). That court found that it did not have "subject-matter jurisdiction to adjudicate [the] dispute" under FSIA because Plaintiffs' allegations were "not 'based upon' [Romarm's] conduct within the meaning of the FSIA, [and] the direct-effect clause of the 'commercial activity' exception does not apply." *See id.* at 6. After the Vermont District Court denied Plaintiffs' Rule 59 motion to reconsider, the Second Circuit affirmed the Vermont District Court's decision. *See Williams V*, 751 F. Appx. at 23.

On January 25, 2019, Plaintiffs filed the present action. *See* Compl., ECF No. 1. Romarm filed its Motion to Dismiss pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) on June 18, 2019. *See* Def.'s Mot. to Dismiss, ECF No. 9 ("Def.'s Mot."). Plaintiffs filed their Opposition on August 22, 2019, *see* Pls.' Opp'n, ECF No. 18, and Romarm filed its Reply on August 30, 2019. *See* Reply, ECF No. 19.

The motion is ripe and ready for the Court's adjudication.

## II.   Legal Standard

Under Rule 12(b)(2), a defendant can move to dismiss a lawsuit if the court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). A plaintiff bears the burden of making a *prima facie* showing that the court has personal jurisdiction over a defendant. *Kurtz v. United States*, 779 F. Supp. 2d 50, 51 (D.D.C. 2011). "A plaintiff must plead specific facts providing a basis for personal jurisdiction[,]" *id.*, and a plaintiff cannot rely on merely conclusory allegations, *Buesgens v. Brown*, 567 F. Supp. 2d 26, 31 (D.D.C. 2008). Accordingly, to establish personal jurisdiction over a defendant, the "plaintiff must allege specific acts connecting [the] defendant with the forum[.]" *Second Amendment Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (quoting *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988)).

## III. Analysis

Romarm argues that Plaintiffs' Complaint "should be dismissed because (1) the doctrine of collateral estoppel prevents Plaintiffs from relitigating personal jurisdiction and subject matter jurisdiction; (2) Plaintiffs' lawsuit was untimely filed; and (3) Plaintiffs have otherwise failed to state a claim upon which relief may be granted." Def.'s Mot., ECF No. 9 at 13. Because the Court concludes that collateral

estoppel prevents Plaintiffs from relitigating personal jurisdiction and finds that issue to be dispositive, it declines to address Romarm's alternative arguments for dismissal.

Plaintiffs do not directly respond to Romarm's arguments, but in a confusing and disjointed brief argue that: (1) the Vermont District Court and Second Circuit decisions regarding lack of subject matter jurisdiction were wrongly decided and there could be subject matter jurisdiction under District of Columbia law, Pls.' Opp'n, ECF No. 18 at 10-18, and (2) there is personal jurisdiction over Romarm in the District of Columbia," *id*. at 19-27.

## A. Plaintiffs' Claims are Barred under the Doctrine of Collateral Estoppel

Romarm argues that "collateral estoppel prevents Plaintiffs from relitigating issues related to . . . personal jurisdiction" because

> Plaintiffs previously filed a lawsuit in the District Court for the District of Columbia with identical allegations arising from the same alleged conduct. The issue of personal jurisdiction was litigated by the parties and determined by Judge Sullivan when the case was dismissed for lack of personal jurisdiction. [*Williams I*], 187 F. Supp. 3d at 74. The final judgment was then affirmed by the Court of Appeals for the District of Columbia Circuit. *Williams* [*II*], 756 F.3d at 787 ("For the foregoing reasons, the judgment of the district court is *Affirmed*."). Both the District Court and the District of Columbia Circuit found that "due process will not

8

permit the district court to exercise its
jurisdiction over Romarm." 756 F.3d at 786.

Def.'s Mot., ECF No. 9 at 14. Plaintiffs do not directly respond to Romarm's collateral estoppel argument, but argue that there is personal jurisdiction over Romarm in the District of Columbia because: (i) there is personal jurisdiction over Romarm in Vermont; and (ii) personal jurisdiction and subject matter jurisdiction are "'inextricably intertwined' in FSIA cases." *id.* at 19-27.

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, [also known as collateral estoppel,] which are collectively referred to as res judicata." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). Under the doctrine of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Jahr v. D.C.*, 968 F. Supp. 2d 186, 190 (D.D.C. 2013) (Sullivan, J.) (quoting *U.S. Postal Serv. v. Am. Postal Workers Union*, 553 F.3d 686, 696 (D.C. Cir. 2009)). "By precluding parties from contesting matters they have already had a full and fair opportunity to litigate, collateral estoppel conserves judicial resources, avoids inconsistent results, engenders respect for judgments of predictable and certain effect, and prevents serial

forum-shopping and piecemeal litigation." *Jahr*, 968 F. Supp. 2d
at 190 (internal quotation marks, brackets, and citations
omitted).

"For a defendant to successfully show that a final judgment
in a prior case precludes the plaintiff from litigating an issue
in the present case, the defendant must demonstrate three
elements: '[1] the same issue now being raised was contested by
the parties and submitted for judicial determination in the
prior case; [2] the issue was actually and necessarily
determined by a court of competent jurisdiction in that prior
case; and [3] preclusion in the second case does not work a
basic unfairness to the party bound by the first
determination.'" *Massey v. Am. Fed'n of Gov't Employees*, 253 F.
Supp. 3d 42, 48 (D.D.C. 2017) (quoting *Martin v. Dep't of
Justice*, 488 F.3d 446, 454 (D.C. Cir. 2007).

> **1. The same issue now being raised was contested by
> the parties and submitted for judicial
> determination in the prior cases.**

With respect to the first element, in the prior action
before this Court, Plaintiffs Mr. Williams and Ms. Howe brought
the same wrongful death claim under the Survival Act and the
same claim under the SLA, on behalf of their son, alleging
damages stemming from his shooting death with a firearm
allegedly manufactured by Romarm. *See Williams I*, 187 F. Supp.
3d at 66. The issue before the Court on Romarm's Motion to

Dismiss was whether the Court had personal jurisdiction over Romarm under the FSIA and D.C.'s long-arm statute. *Id.* at 68. The Maryland District Court faced the same question and concluded that collateral estoppel barred the Plaintiffs from relitigating the question after this Court had already decided the issue. *See Williams III*, 116 F. Supp. 3d at 635, 636. The court found that even though Mr. Attaway and Mr. Blakeley were not a party to *Williams I*, they were in privity with Mr. Williams and Ms. Howe because their interests "with respect to the issue of personal jurisdiction over Romarm were identical to the interests of [Mr.] Williams and [Ms.] Howe in [*Williams I*]: they shared the interest of establishing that Romarm was sufficiently controlled by the Romanian government, such that it was not a separate and distinct entity that qualifies as a 'person' with due process rights for purposes of personal jurisdiction." *See id.* at 638. The Maryland District Court also noted that the four Plaintiffs shared an attorney and that he acknowledged during oral argument that all four Plaintiffs' interests were identical. *Id.* Then, as now, Plaintiffs' claims are based on the same causes of action and factual allegations and the Court addressed the same issue it is confronting in this case—whether this Court has personal jurisdiction over Romarm under FSIA. *See Williams I*, 187 F. Supp. 3d at 70. Plaintiffs essentially concede that the issues involved in this action are

the same as were involved in *Williams I*, even noting that
Plaintiffs seek to "timely re-file this action," identify the
compliant as the "Second Amended Complaint," and fail to allege
any new facts. *See generally* Compl., ECF No. 1.

Accordingly, the Court finds that the first element is met
because the same issue now being raised—personal jurisdiction—
was contested by the parties and submitted for judicial
determination in *Williams I* and *Williams II*.

> ## 2. The issue was actually and necessarily determined by a court of competent jurisdiction in the prior cases.

The second element is met because the determination of
whether this Court had personal jurisdiction was necessary to
this Court's February 4, 2013 Order granting the Motion to
Dismiss. As the Court noted, "[u]nder Federal Rule of Civil
Procedure 12(b)(2), a plaintiff bears the burden of establishing
a factual basis for personal jurisdiction over the
defendant(s)." *Williams I*, 187 F. Supp. 3d at 70 (citing *Crane
v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990)).
Plaintiffs were unable to meet their burden in *Williams I* and do
not attempt to meet the burden in this case as, Plaintiffs do
not identify any changes in law nor does the complaint contain
new factual allegations that would give this Court personal
jurisdiction over Romarm. Accordingly, the Court finds that the
issue of personal jurisdiction over Romarm was actually and

necessarily determined by a court of competent jurisdiction in *Williams I* and *Williams II*.

> **3. Preclusion in this case does not work a basic unfairness to the parties bound by the prior determinations.**

There is no basic unfairness to the Plaintiffs here. First, the Plaintiffs had a full and fair opportunity to litigate the issue of personal jurisdiction before this Court and the D.C. Circuit, and they do not contend otherwise. *See generally* Pls.' Opp'n, ECF No. 18. And as the Maryland District Court explained—and this Court agrees—even though Mr. Attaway and Mr. Blakeley were not a party to *Williams I*, because they were in privity with Mr. Williams and Ms. Howe, collateral estoppel barred all four Plaintiffs from relitigating the question after this Court, based on the same factual allegations, already decided the issue. *See Williams III*, 116 F. Supp. 3d at 635-36. Accordingly, the Court finds that preclusion does not work a basic unfairness to the Plaintiffs here.

For these reasons, the Court **GRANTS** Romarm's Motion to Dismiss.

## B. Plaintiffs' Counsel is Subject to Sanctions Pursuant to Rule 11

After Romarm filed its motion to dismiss, the Court directed Plaintiffs to address: (1) why sanctions should not be imposed pursuant to Rule 11 of the Federal Rules of Civil

13

Procedure; and (2) whether there was any legal basis to commence this lawsuit in light of the fact that this Court dismissed an identical lawsuit, filed in 2012, against the same defendant based on the same facts and claims. *See* Min. Order of July 29, 2019; *see also* Fed. R. Civ. P. 11(c)(3).

Pursuant to Rule 11, 28 U.S.C. § 1927, and the Court's inherent authority, Romarm argues that it should be awarded costs, expenses, and attorneys' fees incurred by the filing of the motion to dismiss. Def.'s Mot., ECF No. 9 at 22. Romarm contends that "[i]n this case, not only is there no justifiable basis for Plaintiffs' pending lawsuit, but Plaintiffs' counsel's conduct has demonstrated that the lawsuit was filed in bad faith and without a legitimate basis." *Id*.[2]

Rule 11 provides as follows:

> By presenting to the court a pleading, written
> motion, or other paper--whether by signing,

---

[2] Pursuant to 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Court has inherent authority to sanction an attorney who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). Because the Court has determined that Plaintiffs' counsel should be sanctioned under Rule 11, the Court does not reach the issue of whether Plaintiffs' counsel's conduct is also sanctionable pursuant to Section 1927 and the Court's inherent power. *See id.* at 50 (noting that "when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power").

filing, submitting, or later advocating it--
an attorney or unrepresented party certifies
that to the best of the person's knowledge,
information, and belief, formed after an
inquiry reasonable under the circumstances:

(1) it is not being presented for any improper
purpose, such as to harass, cause unnecessary
delay, or needlessly increase the cost of
litigation;

(2) the claims, defenses, and other legal
contentions are warranted by existing law or
by a nonfrivolous argument for extending,
modifying, or reversing existing law or for
establishing new law;

(3) the factual contentions have evidentiary
support or, if specifically so identified,
will likely have evidentiary support after a
reasonable opportunity for further
investigation or discovery; and

(4) the denials of factual contentions are
warranted on the evidence or, if specifically
so identified, are reasonably based on belief
or a lack of information.

Fed. R. Civ. P. 11(b). Accordingly, "[u]nder Rule 11, sanctions

may be imposed if a reasonable inquiry discloses the pleading,

motion, or paper is (1) not well grounded in fact, (2) not

warranted by existing law or a good faith argument for the

extension, modification, or reversal of existing law, or (3)

interposed for any improper purpose such as harassment or delay."

*Westmoreland v. CBS Inc.*, 770 F.2d 1168, 1174 (D.C. Cir. 1985).

The court is expected to avoid using the
wisdom of hindsight and should test the
signer's conduct by inquiring what was
reasonable to believe at the time the
pleading, motion, or other paper was

> submitted. Thus, what constitutes a reasonable
> inquiry may depend on . . . whether the
> pleading, motion, or other paper was based on
> a plausible view of the law . . . .

Fed. R. Civ. P. 11 Advisory Committee's Notes to 1983 Amendment.

"Rule 11 . . . imposes an objective standard of reasonable

inquiry which does not mandate a finding of bad faith."

*Chambers*, 501 U.S. at 47. Finally, the Court has "discretion to

determine both whether a Rule 11 violation has occurred and what

sanctions should be imposed if there has been a violation."

*Cobell v. Norton*, 211 F.R.D. 7, 10 (D.D.C. 2002) (internal

quotation marks and citation omitted).

In response to the Court's Minute Order of July 29, 2019,

Plaintiffs' counsel, Daniel Wemhoff ("Mr. Wemhoff"), submitted a

declaration in which he avers that:

> [N]one of the filing and re-filings I have
> made on behalf of my clients, in the above
> styled case over the past 8 years, has been
> fanciful, revengeful or designed to waste
> court resources, but always in the belief that
> personal and subject matter jurisdiction is
> available under this incredibly murky statute
> (the FSIA) now that personal jurisdiction was
> ordered leading to subject matter jurisdiction
> under Law of the Case established in the
> second re-filing in Maryland. Particularly,
> this re-filing comes after the Second
> Circuit's unpublished "Summary Order", which
> it claims "does not have precedential effect"
> and is "without prejudice" on jurisdictional
> grounds.

Pls.' Opp'n, ECF No. 18 at 6. Mr. Wemhoff further argues that

the legislative history of the FSIA indicates that Congress

intended to provide plaintiffs with access to the courts. *Id*.
Finally, Mr. Wemhoff argues that he believes "this case to be
one of first impression as it depends exclusively on a unique
'state' law, the District of Columbia's 'Strict Liability Act'
(SLA), which if interpreted correctly, exposes Romarm to civil
liability." *Id*. at 7.

In its reply brief, Romarm argues that "Plaintiffs'
counsel's conduct has demonstrated that the lawsuit was filed in
bad faith and without any legitimate basis [because it] is
axiomatic that, to sustain a civil lawsuit, both personal
jurisdiction and subject matter jurisdiction elements must be
met," and Plaintiffs have been told by several district courts
and courts of appeal that they have not met that burden. Def.'s
Reply, ECF No. 19 at 9.

Here, the question is whether the Complaint is based on a
plausible view of the law. *See* Fed. R. Civ. P. 11 Advisory
Committee's Notes to 1983 Amendment. As an initial matter, and
as noted above, the Complaint is devoid of factual allegations
and legal claims. As the facts and legal claims are identical to
those in the appeal before the Second Circuit, the Court has
determined that Plaintiffs' claims should be dismissed on
collateral estoppel grounds.

Although his arguments are not entirely clear, Mr. Wemhoff
contends that his filings do not merit sanctions for several

reasons. *See* Pls.' Opp'n, ECF No. 18 at 4-9. First, Mr. Wemhoff argues that "personal jurisdiction was ordered" by the Maryland District Court, was assumed by the Vermont District Court, and therefore personal jurisdiction became the "law of the case." Pls.' Opp'n, ECF No. 18 at 6-8. Mr. Wemhoff misunderstands the rulings of the Maryland District and Vermont District Courts. The Maryland District Court transferred the case to Vermont after concluding that the case could have been brought in Vermont, *see Williams VI*, 2017 WL 87014, at *2, but the Vermont District Court decided the case on subject matter jurisdiction grounds without reaching personal jurisdiction, *see Williams IV*, 2017 WL 3842595, at *6. In any event, Plaintiffs' counsel provides no legal authority for why, even if the Vermont District Court could exercise personal jurisdiction over Romarm in Vermont, this Court can exercise personal jurisdiction over Romarm in the District of Columbia in view of this Court's dismissal of these same claims for lack of personal jurisdiction and the D.C. Circuit's affirmation of that dismissal.

Mr. Wemhoff relies on *U.S. Fidelity and Guaranty Co. v. Braspetro Oil Services, Co.*, 199 F.3d 94 (2d Cir. 1999) to support his argument that filing this action in the District of Columbia is proper because personal jurisdiction and subject matter jurisdiction are "inextricably intertwined" in FSIA cases. Pls.' Opp'n, ECF No. 18 at 22. In *Braspetro*, the district

court denied the defendant's motion to dismiss for lack of subject matter jurisdiction and lack of personal jurisdiction under FSIA and the defendant sought interlocutory review of that decision. *See* 199 F.3d at 96. To exercise pendent jurisdiction over the defendant's personal jurisdiction argument, the Second Circuit needed to determine whether, pursuant to Second Circuit precedent, that argument was "inextricably intertwined" with the defendant's subject matter jurisdiction argument, and the Court determined that it was. *Id*. at 97. Accordingly, this case provides no support for counsel's argument that this case is properly refiled in the District of Columbia.

Mr. Wemhoff finds it significant that the Second Circuit's decision in *Braspetro* is without precedential effect, and that it was "without prejudice." Pls.' Opp'n, ECF No. 18 at 21-22. But the lack of precedential effect in *Braspetro* lends no support to Mr. Wemhoff's argument for refiling this action in this Court. *Braspetro* does not provide any legal support for this Court to exercise personal jurisdiction over Romarm.

Next, Mr. Wemhoff argues that Congress intended to provide plaintiffs with access to the Courts with the enactment of FSIA, but he provides no new legal support or factual assertions to meet his burden of establishing that this Court has personal jurisdiction over Romarm. Finally, even if this is a case of

first impression under the SLA, Mr. Wemhoff again provides no new legal support or factual assertions to support personal jurisdiction over Romarm. Thus, at the time Plaintiffs' counsel filed the Complaint in this case, it was not reasonable for him to believe that the Complaint was based on a plausible view of the law. Accordingly, it is appropriate for the Court to impose sanctions. *See Del Canto v. ITT Sheraton Corp.,* 865 F. Supp. 934, 939-40 (D.D.C. 1994) (noting that "it is without doubt appropriate to impose some sanction under Rule 11 in order to deter repetition of the unacceptable conduct of counsel and 'comparable conduct by others similarly situated.'" (quoting Fed. R. Civ. P. 11(c)(2))).

Given that the Court has determined that Rule 11 sanctions are appropriate, the question becomes what sanction is appropriate. Romarm seeks costs, expenses, and attorney's fees associated with the filing of the Motion to Dismiss. Def.'s Mot., ECF No. 9 at 22. Rule 11(c) provides that a court may impose sanctions in response to a motion pursuant to Rule 11(c)(1)(A), or on its own initiative pursuant to Rule 11(c)(1)(B), but limits the types of sanctions that may be imposed:

> A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a

> penalty into court; or, if imposed on motion
> and warranted for effective deterrence, an
> order directing payment to the movant of part
> or all of the reasonable attorney's fees and
> other expenses directly resulting from the
> violation.

Fed. R. Civ. P. 11(c). Although the D.C. Circuit has not addressed this aspect of Rule 11, the Second Circuit has interpreted "[t]he rule [to] preclude[] a court from awarding attorneys' fees on its own initiative." *Nuwesra v. Merrill Lynch Fenner and Smith Inc.*, 174 F.3d 87, 94 (2d Cir. 1999) (citing Advisory Committee's Notes to 1993 Amendment ("a monetary sanction imposed after a court-initiated show cause order [is] limited to a penalty payable to the court.")).

Here, Romarm did not file a Rule 11 motion despite having notified Plaintiffs' counsel on May 19, 2019 that it intended to do so. Ex. G to Def.'s Mot., ECF No. 9-7 at 4. Accordingly, the Court is without authority to award attorneys' fees and other expenses. *See Nuwesra*, 178 F.3d at 95.

Rule 11 provides that "[a] sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated" and that the sanction may include "an order to pay a penalty into court." Fed. R. Civ. P. 11(c)(4). The Court is cognizant of Mr. Wemhoff's duty to zealously represent his clients, but he is also bound by Rule 11 to ensure that his filings with the Court

are based on a plausible view of the law so that the Court and counsel are not subjected to needless litigation costs. *See Westmoreland*, 770 F.2d at 1179 ("Rule 11 is specifically designed to deter groundless litigation tactics and stem needless litigation costs to court and counsel."). Accordingly, the Court has determined in its discretion that Mr. Wemhoff shall pay to the Clerk of the Court a $1,000 penalty. The Court finds that this sanction is "not more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons." Fed. R. Civ. P. 11 Advisory Committee's Notes to 1993 Amendment; *see also Reynolds v. United States Capitol Police Board,* 357 F. Supp. 19, 27 (D.D.C. 2004) (ordering $1,000 penalty to be paid to the Clerk of Court for continuing legal education); *see also Del Canto,* 865 F. Supp. at 940 (ordering $500 penalty to be paid to the registry of the court "to be used as scholarships for continuing education courses on Rule 11 to be paid equally to two young lawyers with five to ten years of experience in litigating for individuals on a contingent fee basis, in order to educate them and thereby deter the conduct of at least two lawyers from Rule 11 violations").

Finally, the Court notes that Mr. Wemhoff[3] has a history of violating the rules of this Court. When initially filing this action, Mr. Wemhoff was not a member in good standing in this Court, pursuant to Local Civil Rule ("LCR") 44.1(a) because he had not paid his renewal fee as required under LCR 83.9(a). In addition, Mr. Wemhoff's initial filing was labeled "SECOND AMENDED COMPLAINT," *see* Amended Compl., ECF No. 1, and had attached as his Memorandum in Support, a document titled "PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO FRCP RULE 15 (a)(2) and (c)" which had apparently been filed in the Maryland District Court. *See* Am. Compl., ECF No. 1-3. Mr. Wemhoff eventually came into compliance with LCR 83.9(a) by paying his renewal fee and refiling his initial filing with a corrected title, "Complaint." *See* Compl., ECF No. 2. However, in both his initial filing and corrected filing, Mr. Wemhoff failed to comply with LCR 40.5(b)(4) because he identifies *Williams V*, as decided in the Second Circuit, as the only related case. *See* Notice, ECF No. 1-4; *see also* Notice, ECF No. 4. Mr. Wemhoff also failed to comply with this rule in 2012 by failing to

---

[3] The Court takes notice that, in 2016, the District of Columbia Court of Appeals found that Mr. Wemhoff violated District of Columbia Rules of Professional Conduct 1.6(a) (revealing a client confidence or secret without authorization or other justification), 3.4(c) (knowingly disobeying an obligation under the rules of a tribunal), and 8.4(d) (engaging in conduct that seriously interferes with the administration of justice). In re Wemhoff, 142 A.3d 573 (D.C. 2016).

notify this Court of a related case then pending before Judge Amy Berman Jackson, *see* Civil Action No. 11-1924, when he filed the same complaint in Civil Action No. 12-436, which was assigned to this Court. Having found that Mr. Wemhoff violated Local Civil Rule 40.5(b)(4) multiple times, this Court will refer Mr. Wemhoff to the District of Columbia Bar Disciplinary Counsel and to the United States District Court for the District of Columbia Committee on Grievances.

## III. Conclusion

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Romarm's Motion to Dismiss and dismisses Plaintiff's Complaint in its entirety.

Because it was not reasonable for Plaintiffs' counsel to believe that the Complaint was based on a plausible view of the law, the Court imposes sanctions against Mr. Wemhoff in the form of a $1,000 penalty to be paid to the Clerk of Court.

A separate Order accompany this Memorandum Opinion.

**SO ORDERED.**

**Signed:  Emmet G. Sullivan**
          **United States District Judge**
          **April 1, 2020**