UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**NORMAN WILLIAMS, et al.,**
   **Plaintiffs,**

   v.        Case No. 1:19-0183 ES

**ROMARM S.A.,**
   **Defendant.**

## MOTION FOR RECONSIDERATION FRCP 59 (e)

On April 1, 2020 this court dismissed the above styled case filed under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. 1605, for lack of personal and subject matter jurisdiction on grounds of collateral estoppel and claim preclusion. Plaintiffs, Norman Williams, et al., (Williams), file their Motion for Reconsideration, pursuant to Federal Rule of Civil Procedure 59 (e) based on 'clear error and manifest injustice'.

The legal posture of this case has changed radically since it was last before this Court and dismissed due to personal jurisdiction in *Williams I*. Subject matter jurisdiction was never reached in that former case. Now, personal jurisdiction has been judicially established as the Law of the Case in *Williams II,* in the District of Maryland, as discussed below.

The argument made here is that subject matter jurisdiction exists, as a result of the Law of the Case and through precedent, based on the 'commercial activity exception to immunity under the FSIA. Plaintiffs argue there is no claim preclusion to this Court's accepting jurisdiction to decide these matters as the unpublished Second Circuit Summary Order, in *Williams III,* affirming denial of jurisdiction, *without* prejudice, is not final as Plaintiffs will show.

Plaintiffs apologize for any lack of cogency involving the 'vaguely worded' FSIA and failure to render clarity to this tortuous 9 year attempt to assert subject matter jurisdiction over defendant, Romarm, who has been found by Law of the Case to 'import' its weapons to the United States and where the locus of the torts occurred, is not abroad, but right here in the District of Columbia (District).

This court's opinion is based on a factual and legal misunderstanding that this case is collaterally estopped, or issue and claim precluded. Instead, it has been issue precluded on only *one* of three clauses suitable for asserting subject matter jurisdiction per 28 U.S.C. Sec. 1605 (a)(2). Personal jurisdiction has been established by Law of the Case, in former case, *Williams II,* (District of Maryland J. Chuang). This judicial finding includes due process also extending it to subject matter jurisdiction for FSIA purposes.

<sup>1</sup>

The transferor court's decision, in *Williams II,* that personal jurisdiction over Romarm existed in Vermont followed plaintiffs' Amended Complaint, oral argument and their Motion to Transfer to the District of Vermont. The transferor court's decision was never overturned by the transferee court and thus remained the Law of the Case going forward.

I. Venue in the District of Columbia

Once personal jurisdiction is prevalent, various federal rules allow personal jurisdiction movement to other forums, mainly the District Court of the District of Columbia, either (a) through *forum non conviens,* as all trial evidence, witnesses and parties reside here, or nearby Maryland and Romarm would be no more inconvenienced here than in Vermont; or, (b) 28 U.S.C. 1391 (f) (4), which requires this court to be the venue of last resort in suits against foreign aliens; and finally, (c) FRCP (4)(k)(2) allows personal jurisdiction to reside in any forum in cases brought under federal statutes, once a summons is served on a foreign state entity. Sec. 1608. See Ex A of Pltfs. Opp.[Romarm's service response]. Therefore, there is nothing improper for this case to be re-filed in this District Court consistent with federal rules and statutes and within the time granted by the federal savings statute.

II. Second Circuits' Partial Review

Secondly, collateral estoppel, or issue estoppel, *not* claim preclusion, is the operative test here. *Williams III* Second Circuit's unpublished Summary Order was not based on the merits and is therefore not res judicata, nor subject to claim preclusion. Its opinion is only subject to issue preclusion, as it was prevented from taking jurisdiction of the former case and could not rule on the merits. See cit. below.

Its opinion, made *without* prejudice, in its *Williams III's* Order, reviewed *only* one of three applicable clauses of the Act, after the prior judicial finding, establishing the Law of the Case, was sufficient to embody Clause 1's 'import-export' structure of Romarm's U.S. 'commercial activity' in the United States enabling subject matter jurisdiction. See cit. to Order below.

FSIA's Sec.1605(a)(2) requires U.S. district courts to assert jurisdiction over a foreign State in actions based upon *any* of the following clauses:

- [1] a commercial activity carried on in the United States by the foreign state; or
- [2] an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

Sec. 1603 (d) amplifies Clause 1 by the following language:

2

A 'commercial activity carried on in the United States by a foreign state' means commercial activity carried on by such state and having *substantial* contact with the United States. (emphasis added)

From the very outset, Plaintiffs pled the entire 'commercial activity' exception as the basis for subject matter jurisdiction, including the first clause. No clause was singled out to the exclusion of the others. Argument was made on Clause 3 in the event of its relevance. Clause 1 was conceded by the defendant, through concession, admissions, and arguments underlying the Law of the Case. The personal jurisdiction finding in *Williams II* inevitably includes subject matter jurisdiction under the FSIA and as will be seen below, both are 'inextricably interrelated'. The Second Circuit gave no consideration to the Law of the Case in which personal jurisdiction and the due process clause incorporates subject matter jurisdiction.

Further, there is little doubt that Romarm's sales show that it is "substantial" in the United States through FSIA Sec. 1603 (d), *supra,* as judicially evidenced through the Law of the Case, the modem for Clause 1 of Sec.1605 and 1603(d), to assert subject matter jurisdiction through the 'import-export' first clause:

>These sales into Vermont have generated over $55 million in revenue for Romarm. As established in earlier proceedings, the specific firearm used in the shootings at issue in this case was shipped to Vermont … These contacts are not the kind of 'random, fortuitous, or attenuated contacts' or 'unilateral activity of another party or third     person' that the purposeful availment requirement is designed to eliminate as a basis for jurisdiction. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). See Williams v. Romarm, S.A. (D. Md. 2017), at 4 (Transfer Order per Sec. 1406) [Doc. 67, 8-14-03124]

Consequently, the Law of the Case factors, deciding personal jurisdiction, employ the same set of markers for asserting subject matter jurisdiction as it satisfies the constitutional due process necessary to bring a foreign agency, or instrumentality, such as Romarm, before our courts. To ignore the "import-export" predicate exemplified in the legislative history in the passage of the FSIA is to ignore the will of Congress evidenced below:

>As noted in Gemini Shipping, supra, 647 F.2d at 319, the House Judiciary Committee's report 2 accompanying the bill that became FSIA lists 'import-export transactions involving sales to, or purchases from, concerns in the United States' as conduct within the contemplation of the first clause of Sec. 1605(a)(2) and states that the 'substantial contact' standard of Sec. 1603(e) can be met by as little activity as 'receiv[ing] financing from a private or public lending institution located in the United States', such as that furnished by the P.L. 480 program. 3 House Report No. 1487, 94th Cong., 2d Sess. 17 (1976), reprinted in 1976 U.S.Code Cong. & Ad.News 6604, 6615-16.

"[P]urposeful availment" cited in the Law of the Case replicates the 'import-export' expression by Congress sufficient to assert subject matter jurisdiction under Clause 1. As a 'person', a foreign state agent is granted constitutional due process:

>The final step in establishing the court's right to hear the claim is to find a constitutional basis for the statutory exercise of subject matter jurisdiction. See Kline v. Burke Construction Co., 260 U.S. 226, 234, 43 S.Ct. 79, 82, 67 L.Ed. 226 (1922). Each of these four suits is "between a State, or the Citizens thereof, and foreign States," U.S. Const., art. III, § 2, cl. 1, and therefore comes within the judicial power by way of the diversity grant.. . .The district court, we conclude, had the power to hear these claims. **Texas Trading & Mill. Corp. v. Federal Republic of Nigeria,** 647 F.2d 300 [313] (2nd Cir. 1981)
>                              * * *

> The facts of these cases establish that Central Bank, and through Central Bank Nigeria, repeatedly and "purposefully avail(ed themselves)" of the privilege of conducting activities in the United States. Hanson v. Denckla, supra, 357 U.S. at 253, 78 S.Ct. at 1240, citing International Shoe Co., supra, 326 U.S. at 319, 66 S.Ct. at 159. **Texas Trading Milling Corp v. Federal Republic of Nigeria**, 647 F.2d 300, 315 (2nd Cir. 1981) …Having so thoroughly "invok(ed) the benefits and protections of (American) laws. Nigeria and Central Bank would have every "reason to expect to be haled before a court" here. Shaffer v. Heitner, supra, 433 U.S. at 216, 97 S.Ct. at 2586. **Texas Trading,** *supra.*

I. Due Process and 'Inextricably Intertwined' jurisdictions

Federal courts have come to grip with the theory restricting sovereign immunity whether subject matter jurisdiction can pass the due process test. In the instant case, due process, found through personal jurisdiction, paves the way to asserting subject matter jurisdiction. Some circuits, but not the DC Circuit, find the two jurisdictions 'inextricably intertwined', meaning finding one cannot exclude the other. Personal jurisdiction, found first here, as the Law of the Case, is ultimately intertwined with subject matter jurisdiction and the due process clause, once Romarm was found to have 'purposefully availed' itself to the benefit and regulations of the laws and privileges of the U.S. market through its arms 'imports'.

This is how a leading authority views the inevitable interconnection of the two jurisdictions to satisfy the FSIA, first, by its statute, when subject matter precedes personal jurisdiction:

> Accordingly, we now inquire whether any of the other issues Libya has raised are inextricably intertwined with its claim of sovereign immunity (that is, with its defense to subject matter jurisdiction). We begin with the question of personal jurisdiction. It is true, as the parties urge, that the two kinds of jurisdiction--subject matter and personal--are interrelated under the FSIA.
> Pursuant to that statute, there is personal jurisdiction over foreign sovereigns with respect to all claims (a) over which there is subject matter jurisdiction, and (b) as to which process has been properly served. 28 U.S.C. § 1330(b). In other words, the statute makes both service of process and subject matter jurisdiction elements of personal jurisdiction over foreign sovereigns. Rein v. Socialist People's Libyan Arab Jamahiriya, 162 F.3d 748 (2nd Cir. 1998) . . .

4

Then its applicability when personal jurisdiction is found first as *sub judice*:

> Once the court made that determination in Hanil Bank, it necessarily
> had also decided that the defendant had minimum contacts with the
> United States sufficient to establish personal jurisdiction over it in
> an American forum without violating the requirements of due process.
> by agreeing to make payment in New York, id., at 132, and in
> American currency, id. at 130, the defendant had "purposefully
> avail[ed] itself of the privilege of conducting activities within the
> [United States]." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct.
> 1228, 2 L.Ed.2d 1283 (1958). This was enough to establish the
> necessary minimum contacts for personal jurisdiction. Rein v.
> Socialist People's Libyan Arab Jamahiriya, 162 F.3d 748 (2nd
> Cir. 1998)

The Second Circuit 'inextricably intertwined' the two jurisdictions once due process is satisfied under the FSIA:

> The issue of personal jurisdiction in Hanil Bank turned exclusively
> on due process grounds. Id. at 134. 7 The finding of subject matter
> jurisdiction under the commercial activities exception also entailed
> a finding of minimum contacts, and that finding was therefore conclusive
> on the personal jurisdiction question as well. In other words, the issues
> <u>of subject matter jurisdiction and personal jurisdiction were inextricably
> intertwined</u>, because the court could not have answered the former
> without saying everything that was required to answer the latter. Indeed,
> in Hanil Bank the issues were more than inextricably intertwined: they
> were essentially identical. **Rein v. Socialist People's Libyan Arab Jamahiriya,**
> 162 F.3d 748, 760-1 (2nd Cir. 1998)(emphasis added)

Hanil Bank. at 134, a 'commercial activity' exception case, also shows that due process fairness is requisite,

> [a]ccordingly, as plaintiff is entitled to access to our courts and
> defendant could reasonably anticipate being haled into these
> same courts, the maintenance of jurisdiction over this FSIA
> action does not in our view "offend 'traditional notions of fair
> play and substantial justice.' International Shoe Co. v. Washington,
> 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Hanil Bank v.
> PT. Bank Negara Indonesia (Persero), 148 F.3d 127 (2nd Cir. 1998)

It is plausible that this Circuit, as well, will analytically determine that subject matter and personal jurisdiction must be decided in unison and, in particular, here, where personal jurisdiction has been decided on the due process grounds of 'purposeful availment' and 'regular course of sales' in this

country on the same grounds as that necessary for the 'import-export' clause 1 of the FSIA, or subject matter jurisdiction, tying both jurisdictions together.

## II. Issue Preclusion not Claim Preclusion

This court's opinion rests on claim preclusion, that the former case decided by the Second Circuit in *Williams III* is res judicata and on the merits and as such may not be brought again. Plaintiffs argue that this is clear error and that the former decision is actually a question of issue preclusion, or collateral estoppel, as the question involves the Second Circuit's *refusal* to consider the first clause of the FSIA even though it had effectively become the Law of the Case. This omission cannot be precluded on grounds of collateral estoppel. It is also relevant that the Second Circuit's Summery Order is unpublished, and without prejudice, i.e., available for re-filing on grounds of jurisdiction.

The Second Circuit's affirmance of dismissal on only the third clause of the 'commercial activity' exception ignores that there was already a finding of personal jurisdiction in Vermont on the very basis – 'substantial' business within the U.S. - as the FSIA prescribes necessary. This was the predicate-law of the case and personal jurisdiction – that there was a 'regular course of business' in the United States conducted by Romarm, which is the statutory level of activity defined in clause 1 of the Act.

This is the proper subject of collateral estoppel inquiry, not claim preclusion, based on the failure of the District of Vermont and the Second Circuit to deal with the FSIA's subject matter jurisdiction integral to the predicate of their obtaining personal jurisdiction in the first place.

Instead, the former court confined their denial of subject matter jurisdiction *only* if Romarm's 'commercial activity' was proved to be off shore. That is, if Romarm could show that exchange of title of their weapons overseas restricted it to the third clause of the FSIA exception and if it had a 'direct effect' on the United States. No legal precedent was presented that showed that the exchange of title abroad was anything more than a technicality. Thus, reserving the authority for jurisdiction as an 'importer' to clause of the Act.

Both rules of the District of Columbia and this Circuit would deny issue preclusion where a

court fails to decide an identical issue in the former case between the parties. Precedence weighs against issue preclusion based on issues of personal jurisdiction and due process and their applications to subject matter jurisdiction left unresolved in the former case: "Before the doctrine of collateral estoppel can be applied, it must be demonstrated that: (1) the same issue was involved in both cases; (2) that issue was litigated in the first case; (3) resolving it was necessary to the decision in the first case; (4) the decision in the first case, on the issue to be precluded, was final; and (5) the party attempting to raise the issue in the second case was fully represented in the first case. United States Dep't of Commerce v. Fed. Labor Relations Auth., 18 Wage & Hour Cas.2d (BNA) 1660, 192 L.R.R.M. (BNA) 3281, 672 F.3d 1095 (D.C. Cir. 2012. Patton v. Klein, 746 A.2d 866 (D.C. 1999).

There has been no showing that the first clause issue was 'litigated in the first case' to require issue preclusion here when subject matter jurisdiction evidence was before the former courts based on with the facts underlying the Law of the Case. cit.

Pertinent to legal authority and legal precedent from this jurisdiction, on refusal to decide both issues, such as the two clauses here, a decision on one does not preclude the other in a later action:

> '[I]f a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." RESTATEMENT (SECOND) OF JUDGMENTS § 27, cmt. i. The determinations, not being "essential to the judgment have no issue preclusive effect in subsequent proceedings.18 However, <u>if on appeal the "appellate court upholds one of these determinations as sufficient and refuses to consider whether or not the other is sufficient and accordingly affirms the judgment, [then] the judgment is conclusive as to the first determination"</u> but not the second. RESTATEMENT (SECOND) OF JUDGMENTS § 27, cmt. o. CARR v. ROSE, 701 A.2d 1065 (D.C. 1997) (emphasis added)

This would mean that if the former court refuses to consider, or even acknowledge that the Law of the Case impacts favorably for subject matter jurisdiction under the FSIA [clause 1], that issue must remain actionable in the succeeding case awaiting a final ruling on the judgment, as until now it has been only partially adjudicated. Precedents from this jurisdiction are favored as the FSIA is a 'pass

through' statute relying on local law:

> The order issued by the Maryland court provides another indication of the applicability of collateral estoppel. Where the court makes an explicit ruling on a particular issue, collateral estoppel is applicable and the issue is resolved. Obversely, where the court explicitly declines to rule on a particular issue, there is no collateral estoppel effect. op.om. Henderson v. Snider Bros., Inc., 409 A.2d 1083 (D.C. 1979)

Similarly, when a judgment specifically rested on alternative grounds is appealed, only those issues expressly considered by the appellate court can be used, as the basis for a plea of collateral estoppel. International Refugee Organization v. Republic S.S. Corp., 189 F.2d 858, 862 (4th Cir., 1951);Restatement of Judgments supra § 69, comment b; 1B J. Moore supra ¶ 0.4435 n.10. See Allegheny County v. Maryland Cas. Co., 146 F.2d 633 (3d Cir., 1944), cert. denied, 325 U.S. 855, 65 S.Ct. 1184, 89 L.Ed. 1975 (1945). Stebbins v. Keystone Insurance Company, 156 U.S.App.D.C. 326, 481 F.2d 501 (D.C. Cir. 1973)[6]

Not surprisingly, this Circuit takes the position that it is not bound by unpublished opinions, even those of its own court. This position would necessarily extend to those unpublished in other circuits *sub judice*;[7] "While we must follow existing circuit law as established in our precedent, 'we are bound only by prior published opinions of this Circuit and not by other means of deciding cases'. United States v. North, 910 F.2d 843, 881 (D.C.Cir.1990). We are therefore free in this published opinion to depart from the conclusion reached in our earlier unpublished memorandum." Milton S. Kronheim & Co., Inc. v. District of Columbia, 91 F.3d 193, 319 U.S. App. D.C. 389 (D.C. Cir. 1996) On collateral estoppel, <u>Kronheim</u> states, "preclusion in the second trial must not work an unfairness."

Collateral estoppel has no application here where clause 1 of Sec. 1605 was the underlying predicate to finding personal jurisdiction interlocking with similar grounds for finding subject matter jurisdiction by Romarm 'regular[y]' shipped its arms here. Although, the District of Vermont accepted this predicate when it accepted personal jurisdiction to rule on subject matter jurisdiction, it never determined whether Romarm's 'imports' to Vermont were also relevant to subject matter jurisdiction

based on prior judicial authority transferring the case.

The Second Circuit Order, *without* prejudice, refused to review on this predicate [clause 1] issue because it was not ruled on below, instead of taking steps to rule either way, or remand. This passing the buck should not be the basis for collateral estoppel here where plaintiffs have a legal right for a decision on the basis of the statute's jurisdictional restriction on sovereign immunity.

The reluctance by the Second Circuit negates preclusion on grounds of "unfairness" to these plaintiffs. How can it be that a law of the case founded on due process, showing that Romarm "purposefully avail[ed]" itself of the U.S. market and has carried on a 'regular course' of sales in excess of $55 million in revenue is ignored when the same was adopted by the District of Vermont in taking jurisdiction. This anomaly must not be borne by this court, brought here without prejudice.

Finally, under District of Columbia law on collateral estoppel there is an additional step that must be taken before an issue may be precluded and is relevant: there must be a "valid, final judgment on the merits." *Williams III* never reached the merits. See Hogue v. Hopper, 728 A.2d 611, 614 (D.C. 1999).

The Second Circuit's justification for not taking up the entire FSIA statute pled and included in the law of the case, based on the 'import-export' clause 1, was that the plaintiffs had not argued it. It was not obvious to the appeals court that the predicate to asserting personal jurisdiction and assuring due process, were facts already in evidence assuring personal jurisdiction. This adjudication was based on Romarm's role an 'importer' of arms by 'purposefully avail[ing]' itself of the benefits and protection of the laws of this country by selling arms sufficient to impose subject matter jurisdiction. There was no need to argue what was already inarguable and already the predicate for the District of Vermont taking personal jurisdiction. In fact, the district court knew the incident weapon, with others, had been shipped to the forum state.

To cover the extreme prong of the 'commercial activity' exception under Sec. 1605 (a)(2), the

8

third clause 3, as it was credible that arms exchanges overseas, at least in title, might preclude Romarm from being an importer per se, albeit, if substituted by its U.S. distributor. Defensively, these facts did not stand up regardless whether clause 3 and 'direct effect' was applicable to the claims presented.

As jurisdiction under the FSIA statute is a pure question of law, whether sovereign immunity was restricted, or not, under 'commercial activity'. The high court has concluded when an appellant fails to preserve a legal issue inadvertently constitutes a forfeiture, not a waiver. It further held that exceptional circumstances compelled review despite the forfeiture:

> Notably, the availability of qualified immunity is a pure question of law; the public interest would be better served by addressing the issue than ignoring it; and none of the prudential concerns — including unduly causing surprise — would be implicated because the appellee itself had raised the issue.

The distinction between forfeiture and waiver is recognized to various extents in other federal circuits, but derives from well-established U.S. Supreme Court precedent. *See, e.g.*, *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 658, 646) (1938)).

III. First Clause

*Williams II* finding that Romarm's 'commercial activity' is [substantially] within the United States is sufficient, by any legal definition, to incorporate the first clause for subject matter jurisdiction purposes. By virtue of its selling weapons here it stands to reason that any illegal activity, as defined by local statute, will be connected to, or 'based upon' its 'commercial activity' and bring it within the scope of the FSIA. In fact, the locus of the tort is indispensable to jurisdiction. This is the standard that must be tested and should not be collaterally estopped when never entertained in the former suit.

Congress legislatively expressed that a foreign state importer to the United States was the best example of a 'commercial exception' to sovereign immunity under the Act.

> We therefore need decide only whether, under the language of § 1605 (a)(2), the commercial activity here was "carried on in the United States. 'Section 1603(e) of the Act provides that a commercial activity is carried on here if it has "substantial contact with the United States.' Defendants' conduct certainly satisfies that standard, for Syria solicited bids in the

9

> United States, and paid under the contract through a letter of credit confirmed by a New York bank. The House Report to the bill that became the FSIA lists "import-export transactions involving sales to, or purchases from, concerns in the United States" among the conduct within the first clause of § 1605(a)(2). House Judiciary Committee, *Jurisdiction of United States Courts in Suits Against Foreign States,* H.R.Rep. No. 1487, 94th Cong., 2d Sess. 16, *reprinted in* [1976] U.S.Code Cong. & Admin. News 6604, 6615 ("*House Report*"). … the "substantial contact" standard of § 1603(e) can be satisfied by as little activity as "receiv[ing] financing from
>
> a private or public lending institution located in the United States." *Id.* At 6615-16. (emphasis added) Gemini Shipping, Inc. *v.* Foreign Trade Org. 647 F.2d 317, n. 30

The record clearly shows, in Plaintiffs' Opposition, that defendant, Romarm, has operated in the U.S. importing its arms for more than twenty (20) years with over $55 million in revenue. It is one of these imported weapons, an AK-47 style semi-automatic assault weapon, 'discharged' in the District in violation of its Strict Liability Act (SLA), causing death and injuries to the plaintiffs, on which this lawsuit is based. Liability is left to another day, but jurisdiction cannot wait. It was the concern of Congress that plaintiffs be given "access to the courts" under the FSIA. House Report at 6605, Congress in the FSIA certainly did not intend significantly to constrict jurisdiction; it intended to regularize it. See House Report at 6605-06.

…" **Texas Trading & Mill Corp.** *supra.*

IV. Jurisdiction not Waiver

The Second Circuit based its affirmance of lack of subject matter jurisdiction on waiver, that plaintiffs had waived clause 1 of the 'commercial activity' exception that Romarm does not carry out its arms sales *within* the United States. Whatever waiver the circuit intended had already been superseded by District of Vermont's assumption of personal jurisdiction, aided by the due process clause, having been decided in *Williams II.* The former court's Law of the Case ruling went well beyond the statutory authority granting personal jurisdiction through the FSIA's Sec. 1330, it was inclusive of the constitutional protection necessary to bring Romarm before this court under the FSIA. Here is a reading

of that statute: Sec. 1330(b). "Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under [section 1608 of this title](#)."

      The District of Maryland's ruling is that Romarm satisfied the 'minimum contacts' test for personal jurisdiction. As a result of personal jurisdictional going first and satisfying constitutional due process similarly incorporates subject matter jurisdiction through 'purposeful availment'. The latter satisfies the first clause's Sec. 1608 requirement that its 'contacts' be 'substantial' is judicially provided through its 'regular course of sales' and more than `$55 Million in revenue'.

      Once the technicality that Romarm was operating off shore to shield it from jurisdiction onshore was removed by denial of the third clause, clause 1 remained judicially intact through the factual predicate for the Law of the Case. It remains so today in this re-filing in compliance with the federal Savings Statute.

VI 'Based Upon' In Country

      Application of the plaintiffs' tortious claims through clause 1, as opposed to the 'direct effect' factor of clause 3, simplifies the analysis considerably. It no longer needs to be determined where the tort occurred – foreign or domestic - the 'based upon' impediment to clause 3. Intervening events abroad are non existent. Romarm is found to be carrying on its 'commercial activity' within the United States selling its weapons here and invoking the 'benefits and protection' of our laws.

      Death and bodily injuries occurred in the U.S., caused by the 'discharge' of its semi-automatic AK-47 assault style weapon are amenable to common law, or statutes of the 'states' satisfying the FSIA. Suits go to the merits once jurisdiction is found.

      According to the Supreme Court, the "action must be 'based upon' some 'commercial activity' by [defendants] that had 'substantial contact' with the United States the meaning of the Act." Saudia Arabia v. Nelson, 507 U.S. 349, 358 (1993). In order to sustain jurisdiction on this basis,

"something more than a mere connection with, or relation to, commercial activity must be shown." Indeed, we "have required a significant nexus exist between the commercial activity in this country upon which the exception is based and a plaintiff's cause of action." NYSA-ILA Pension Trust Fund v. Garuda Indonesia, 7 F.3d 35, 38 (2d Cir.1993) Filetech V. France Telecom S.A., 157 F.3d 922 (2nd Cir. 1998)

V. Conclusion

Venue is proper in this District Court according to various federal rules and statutes as personal jurisdiction has been found through the Law of the Case. Subject matter jurisdiction also exists under the FSIA, if not based on the due process found to be associated with personal jurisdiction, but also that both jurisdiction are 'inextricably intertwined' according to some circuits and plausibly in this circuit.

Neither res judicata, nor issue preclusion, bars this Courts's review of clause 1 of the Act's 'commercial activity' exception, having not been fully reviewed and finalized by the Second Circuit's Summary Order, unpublished and without prejudice.

It is by design that the FSIA was passed to give parties 'access to the courts'. Congress also intended that 'import-export' transactions in the United States was the underlying purpose behind class1 of the immunity exception. It would do manifest injustice to these plaintiffs not to do justice in this case and against the public interest not to assert the jurisdiction to reach liability for weapon violence and the laws of the 'states' enacted to protect its citizens.

    Respectfully submitted,

    /s Daniel Wemhoff, Esq.

    Law Office of Daniel Wemhoff

    9601 Southbrook Dr. A107
        Jacksonville, Fl 32256

CERTIFICATE OF SERVICE

  I hereby certify that a copy of the foregoing Motion for Reconsideration was transmitted to the attorneys of record for the defendant on April 27. 2020.

             /s Daniel Wemhoff

          UNITED STATES DISTRICT COURT

          FOR THE DISTRICT OF COLUMBIA

**NORMAN WILLIAMS, et al.,**

   **Plaintiffs,**

  **v.**                  **Case No. 1:19-0183 ES**

**ROMARM S.A.,**

   **Defendant.**

           **<u>OPPOSITION TO SANCTIONS</u>**

Plaintiffs' attorney, Daniel Wemhoff, opposes sanctions, as explained fully in his Declaration, that he not only vetted the case before re-filing, but that he is fully supported, both factually and legally in doing so, if not plausibly on one theory passed on by other circuits.

Secondly, the court accuses this attorney of deception by not listing 'related cases' on the court's Information sheet. In the first instance he was prohibited by a limitation statute from doing so as is fully explained. In the second instance, he was prevented from listing any beyond the latter case due to space limitations. If, as the court perceives, there was a motive to hide former cases, than this attorney pleads guilty to hiding one case he was most proud of – his victory in establishing personal jurisdiction to transfer this case from the District of Maryland to Vermont.

Respectfully submitted,

/s Daniel Wemhoff

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

**NORMAN WILLIAMS, et al.,**
    **Plaintiffs,**

    v.                                                                                                 **Case No. 1:19-0183-ES**

**ROMARM S.A.,**
    **Defendant.**

**DECLARATION RE:SANCTIONS**

_____I, Daniel Wemhoff, do hereby declare:

1. I am the attorney who has represented the plaintiffs in this action during the past nine (9) years;

2. I am the attorney who was sanctioned by the court in the amount of $1,000 for alleged ethical breaches and reported to DC Bar Counsel;

3. First, I was cited for re-filing the present action after it was dismissed for want of jurisdiction without prejudice, by the Second Circuit, in an unpublished opinion in the former case;

4. Prior to re-filing the present case I thoroughly vetted this case with a volunteer attorney at the District of Columbia Bar who advises its members on ethical matters. I explained to him, to the best of my ability, the complexity of this matter, based on an abstruse Foreign Sovereign Immunities Act;

5. I explained that this case had been dismissed for lack of subject matter jurisdiction in an unpublished opinion, without prejudice, based on one clause of the Act's 'commercial activity' and the appeal court's failure to review another clause applicable to the facts on the record;

6. After a thorough discussion with the Bar attorney he asked me whether I felt I was comfortable representing the present clients in re-filing this case. I said I was after speaking to him and he urged me to go forward;

7. I have stated my reasons exhaustively in Plaintiffs' Opposition to the Motion to Dismiss and in the Motion for Reconsideration so I will not defend my decision here;

8. Secondly, I have been charged with 2 deceptions when filling out the court's Information Sheet which I can fully defend. Both deal with the 'related cases' section on the sheet. In the first instance the court claims that when I originally re-filed the initial case in this court to preserve a change in the statute of limitation I did not show the dismissed case as being related. I did not 'relate' the dismissed case because I understood that once it was dismissed here it had no more relation to the new case. I had also double checked this reasoning with counsel in the District's City Council who informed me that the re-filed case had to be totally unrelated and was unrelated from the dismissed case or the extension to the statute of limitation extension may not be applied. The dismissed case had no relationship in law to the new case and that is why it was omitted as a 'related' case.

   9. The court charged me in the second deception that when the instant case was re-filed I failed to list all of the former cases as related. There were 5 of them. First, practically, there was not enough room on the 'related' form to list them so I named the last court, the second circuit that this court would look to for the re-filing given its full case background. Also, my opponents knew full well where the case had been and the court here once its motion to dismiss was filed;

   10. As to an ill motive, as the court suspects concealment. Why would I wish to conceal the case I had won personal jurisdiction in the District of Maryland from where the case was transferred to the District of Vermont and became the law of the case favoring the plaintiffs, by trying to hide it . Had there been room on the form it would certainly have been listed as would the remainder of the cases;

   11. I believe it necessary that the court take into consideration the state of my profession and my life at this time as I have earned nothing, nor have been able to represent new clients in the past 3 years.

   12. My nervous system has been ravaged by ALS, or Lou Gehrig's disease, during this period. I need to be attended by nurses , hire physical therapists and pay heavy expenses so far in a retirement community. This has been an exceptional drain on my dwindling financial resources.

   13. My representation of the clients in this case has been pro bono for 9 years with most court costs and fees paid by me without remuneration. There have been no advances paid in this case.

   14.  I have done my best to represent those who are victims because of the societal conditions and the weapon violence they encounter. I can only ask that the court gives them access as equally and fairly as they do corporations.

                                                            /s Daniel Wemhoff